UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| ERIKA CARAWAY, | : Case No. 3:19-cv-151 |
| Plaintiff, | : |
| vs. | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**DECISION AND ENTRY**

**I.     Introduction**

In December 2013, prior to Plaintiff Erika L. Caraway's eighteenth birthday, an application for Supplemental Security Income was protectively filed on her behalf. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Emily Ruth Statum concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and she filed a previous action in the United States District Court for the Southern District of Ohio. *See Caraway v. Commissioner of Social Security*, 3:16cv138, 2017 WL 3224665 (S.D. Ohio July 31, 2017) (M.J. Newman) *Report and Recommendations adopted*, 2017 WL 3581097 (S.D. Ohio Aug. 17, 2014) (J. Rose). The Court vacated the Commissioner's decision and

remanded the case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. *Id.*

Upon remand, ALJ Mark Hockensmith held a second hearing, during which Plaintiff amended to a closed period of disability, beginning January 1, 2002 and ending on June 20, 2016. The ALJ determined that Plaintiff was not disabled and therefore not eligible for benefits. Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Hockensmith's non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 7), the Commissioner's Memorandum in Opposition (Doc. No. 10), Plaintiff's Reply (Doc. No. 11), and the administrative record (Doc. No. 6).

## II. Background

Plaintiff asserts that she has been under a "disability" since January 1, 2002. At the time the application was filed, Plaintiff was seventeen years old and was accordingly considered an "adolescent" under Social Security Regulations. 20 C.F.R. § 416.926a(g)(2)(v). At the time of ALJ Hockensmith's decision, Plaintiff was "younger person" under Social Security Regulations. *See id.* § 416.963(c). She has a high school education. *See id.* § 416.964(b)(4).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 6, PageID 670-96); Plaintiff's Statement of Errors (Doc. No. 7); the Commissioner's Memorandum in Oppositions (Doc. No. 10), and Plaintiff's Reply (Doc. No. 11). Rather

than repeat these summaries, the Court will focus on the medical source opinions in the discussion below.

### III. Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc.*

*Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.  The ALJ's Decision

As noted previously, it fell to ALJ Hockensmith to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations.[1] *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1:  Plaintiff did not engage in substantial gainful employment between her application date, December 7, 2012, and June 19, 2016.

---

[1] Because Plaintiff was a child under the age of eighteen when her application for supplemental security income was filed, the ALJ also considered whether Plaintiff met the childhood standard of disability. (Doc. 6, PageID 671-85). The ALJ concluded that Plaintiff was not disabled prior to attaining the age of eighteen. *Id.* at 685. Plaintiff does not challenge this determination.

4

| | |
|---|---|
| Step 2: | She has the severe impairments of idiopathic thrombocytopenic purpura (ITP), asthma, attention deficit hyperactivity disorder (ADHD), anxiety, and mood disorder. |
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations:  (1) no climbing ladders, ropes, or scaffolds; (2) frequent climbing ramps/stairs; (3) no work at unprotected heights or with dangerous machinery; (4) must avoid concentrated exposure to extreme cold, vibration, fumes, dust, gases, odors, and poorly ventilated areas; (5) limited to simple, routine tasks; (6) in a static work environment with few changes in routine; (7) no fast paced work or strict production quotas; and (8) would be absent once every other month." |
| Step 4: | She has no past relevant work. |
| Step 5: | Since attaining age eighteen, she could perform a significant number of jobs that exist in the national economy. |

(Doc. No. 6, PageID 670-96).  These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 696.

**V.   Discussion**

Plaintiff contends that the ALJ erred by failing to properly evaluate the medical opinions of record.  The Commissioner maintains that substantial evidence supports the ALJ's decision.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions.  "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians,

5

commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

In the present case, there are seven medical opinions at issue: one from Plaintiff's treating physician, James Derksen, M.D.; one from an examining consultant, Brian R. Griffiths, Psy.D.; and five from non-examining consultants, Cynthia Waggoner, Psy.D.,

6

John Mormol, M.D., Roseann Umana, Ph.D., Rachel Rosenfield, M.D., and Robert B. Sklaroff, M.D.

Plaintiff asserts that "the ALJ reversibly erred in evaluating the medical source opinions by failing to adequately evaluate the non-treating opinions pursuant to the required criteria and by applying significantly less rigorous scrutiny to these opinions than to the treating source opinion of Dr. Derksen." (Doc. No. 7, PageID 1051-52).

### A. James Derksen, M.D.

Dr. Derksen completed interrogatories and a medical assessment in May 2014. He treated Plaintiff for idiopathic thrombocytopenic purpura (ITP) and ADHD. (Doc. No. 6, PageID 606). He noted that she has a "high risk of bleeding due to low platelet count[,] e.g. manual work." *Id.* at 606 (capitalization omitted). Dr. Derksen opined that Plaintiff's ability to push/pull was affected by her impairments. He explained, "Patient cannot risk any bruising or trauma due to low platelet count." *Id.* at 602 (capitalization and emphasis omitted). Although Dr. Derksen's checkmark indicated that Plaintiff's ability to lift/carry was not affected by her impairments, he then provided the same explanation, suggesting that her ability was affected. *Id.* at 600. Dr. Derksen opined that Plaintiff's exposure to chemicals, fumes, and vibration should be restricted. He concluded that Plaintiff did not have the residual functional ability to do sedentary work on a sustained basis. *Id.* at 603.

Turning to mental limitations, Dr. Derksen indicated that Plaintiff's ADHD symptoms include a decreased attention span and lack of concentration. *Id.* at 606. He opined that Plaintiff could not be prompt and regular in attendance, sustain attention and

7

concentration, demonstrate reliability, work at a consistent pace, respond appropriately to changes in a routine work setting, or get along with co-workers/peers. *Id.* at 607-12. She a has a slight restriction of activities of daily living; moderate difficulties in maintaining social functioning; and marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. *Id.* at 613.

      The ALJ found that, under the treating physician rule, Dr. Derksen's opinion was not entitled to controlling or deferential weight and, instead, assigned it "little weight" The ALJ provided several good reasons, supported by substantial evidence, for discounting Dr. Derksen's opinion. The ALJ recognized that Dr. Derksen was Plaintiff's treating physician and had "seen her on a relatively regular basis for several years." *Id.* at 693; *see* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating source …."); 20 C.F.R. § 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). The ALJ correctly recognized that Dr. Derksen is not a hematologist or other kind of specialist. *See id.* § 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

      The ALJ found that Dr. Derksen's opinion was not supported by his own progress notes. (Doc. No. 6, PageID 693). Indeed, Dr. Derksen's "notes document few, if any, significant objective examination findings." *Id.* (citations omitted); *see* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a

8

medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). For instance, in April 2014, Dr. Derksen indicated that although she had a low platelet count recently, she had not experienced bleeding. (Doc. No. 6, PageID 693 (citing Doc. No. 6, PageID 594). Likewise, in November 2014, she also had a low platelet count but he indicated that she was "feeling well" and her ITP was "stable" with "no bleeding." *Id.* (citing Doc. No. 6, PageID 647, 653).

Furthermore, the ALJ determined that Dr. Derksen's opinion is not consistent with treatment notes from Dr. Dole, Plaintiff's hematologist. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The ALJ observed that Dr. Dole's notes consistently showed normal physical examinations and that Plaintiff's ITP was stable with no bleeding issues. (Doc. No. 6, PageID 69); *see* Doc. No. 6, PageID 573 ("doing well with no complaints"). "Moreover, in Dr. Dole's progress notes, including during periods of low platelet counts, Dr. Dole recommended only 'trauma precautions' and that the claimant avoid contact sports." *Id.* at 694 (citing Doc. No. 6, PageID 516, 575, 586, 624). The ALJ found that the limitations he set forth in Plaintiff's residual functional capacity assessment—a reduced range of light work with no exposure to hazards—adequately account for Dr. Dole's recommendations.

The ALJ also discounted Dr. Derksen's opinion on Plaintiff's mental limitations because his own progress notes do not support them. Dr. Derksen noted on several occasions that Plaintiff's ADHD was controlled. *Id.* at 693 (citing Doc. No. 6, PageID 419, 464, 541, 543, 653). Although Plaintiff had increased irritability and concentration

9

problems in August 2014, she had been off ADHD medication for over one year. When Dr. Derksen re-started her on medication, she reported three months later that she was stable. *Id.* at 693-94 (citing Doc. No. 6, PageID 653, 656). In addition, Dr. Dole's treatment notes, which indicated on several occasions that her "ADHD was stable on and off therapy," do not support Dr. Derksen's opinion. *Id.* at 694 (citations omitted).

These reasons constitute good reasons for assigning Dr. Derksen's opinion little weight.

### B. Brian R. Griffiths, Psy.D.

Dr. Griffiths evaluated Plaintiff in April 2013. *Id.* at 533-39. Dr. Griffiths found that Plaintiff was cooperative with normal speech. *Id.* at 536. Her mood was euthymic, her affect was reactive, she displayed no autonomic or motoric indications of anxiety. *Id.* at 537. Plaintiff was alert, responsive and oriented to time, place, person and situation. She was not confused, and her remote recall was adequate. *Id.* Her short-term memory skills were poor. *Id.* Dr. Griffiths diagnosed attention deficit hyperactivity disorder (by history), mood disorder not otherwise specified (NOS), and anxiety disorder NOS. *Id.* Dr. Griffiths assigned Plaintiff a global assessment of functioning score of sixty, indicating moderate symptomatology. *Id.* at 538. He opined that given her poor performance on the Digit Span test, Plaintiff might have problems remembering and carrying out basic work activities in a timely and consistent manner. She may have difficulty with sustained attention and concentration, particularly if she is not using her ADHD medication. Further, her depression, mood instability, agitations, irritability, and poor frustration tolerance may interfere with task persistence and pace. She may have

10

difficulty interacting with coworkers, supervisors, and the general public due to her inattentiveness, impulsivity, and restlessness. Work pressures and stress might exacerbate depression, mood swings, agitation, and angry outbursts, leading to interpersonal problems at work.

The ALJ assigned "some weight" to Dr. Griffiths' opinion. He reasonably discounted Dr. Griffiths' opinion because it was vague and did not provide any specific functional limitations. *See* 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). For instance, although Dr. Griffiths opined that Plaintiff "may have difficulty with sustained attention and concentration …," he did not define "difficulty." Likewise, when he opined that her "ADHD may further negatively impact her ability to effectively interact with coworkers, supervisors, and the general public," he did not define "negatively impact." (Doc. No. 6, PageID 691). The ALJ also noted that Plaintiff was not taking Methylphenidate at the time of the evaluation because she was on spring break.

The ALJ assigned "little weight" to Dr. Griffiths' opinions "[t]o the extent his opinion can be interpreted as supporting more than moderate impairment …." *Id.* at 691-92. The ALJ recognized that Plaintiff's ADHD caused memory and concentration problems but concluded that those issues were no more than moderate—as evidenced by her ability to complete school and become a phlebotomist. *Id.* at 692. This is supported further by the fact that Dr. Griffiths' assigned Plaintiff a GAF score of sixty—indicating

11

moderate symptomatology.[2]

### C. John Mormol, M.D., Rachel Rosenfield, M.D., Cynthia Waggoner, Psy.D., and Roseann Umana, Ph.D.

Plaintiff asserts that the ALJ failed to adequately evaluate the non-treating opinions by applying significantly less rigorous scrutiny to those opinions than to the treating source opinion of Dr. Derksen. Plaintiff asserts that the ALJ's "vague, cursory, conclusory boilerplate 'evaluation' of the state agency opinions falls short of what is required by [the] Commissioner's rules and regulations. (Doc. No. 7, PageID 1052).

Dr. Mormol reviewed Plaintiff's records in May 2013. (Doc. No. 6, PageID 141-54). He opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently. *Id.* at 148. She could stand and/or walk for six hours in an eight-hour day and sit for six hours. She could never climb ladders, ropes, or scaffolds. She could frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She should avoid all exposure to hazards such as machinery and heights.

In September 2013, Dr. Rosenfeld reviewed Plaintiff's records and generally adopted Dr. Mormol's assessment. *Id.* at 156-71. However, she concluded that Plaintiff did not have any limitations in balancing, stooping, kneeling, crouching, and crawling.

The ALJ assigned "great weight" to the opinions of the record-reviewing physicians, Dr. Mormol and Dr. Rosenfield (with "greatest weight" to the more recent

---

[2] The ALJ addressed the GAF score specifically, assigning it "some weight." The ALJ recognized that GAF scores are "only a subjective estimate by a clinician of the claimant's status in the preceding two weeks, and this score was provided after just one evaluation." (Doc. No. 6, PageID 692). Nevertheless, the ALJ found that "this score is consistent with the preponderance of the examination findings from [Plaintiff's] treating and examining sources, which supports a reasonable inference that [she] experiences no more than moderate difficulties in functioning." *Id.*

opinion of Dr. Rosenfield) because they adequately accounted "for the preponderance of the evidence, including the evidence submitted after their assessments." *Id.* at 691. Specifically, the ALJ explained that their opined limitations account for Plaintiff's "history of ITP, which causes her to bruise easily but has not caused any significant complications or hemorrhages, and has not required a transfusion." *Id*. Although the ALJ could have expanded on this explanation, given the similarities between the ALJ's assessment of Plaintiff's residual functional capacity and the State agency physicians' opinion, the ALJ's reasons for Plaintiff's limitations throughout his decision also support his conclusion that the State agency physicians' opinions are entitled to great weight.

Notably, however, the ALJ did not adopt the record-reviewing physician's opinions entirely. He recognized a need for further limitations. Specifically, to account for Plaintiff's respiratory condition, the ALJ found that she must avoid concentrated exposure to pulmonary irritants. Further, the ALJ found that Plaintiff would be absent once every other month.

Turning to the record-reviewing psychologists, in May 2013, Dr. Waggoner reviewed Plaintiff's records. *Id.* at 141-54. She opined that Plaintiff is able to perform simple, repetitive, one to two step tasks without strict production quotas and with infrequent changes. Dr. Umana reviewed Plaintiff's records in September 2013 and affirmed Dr. Waggoner's assessment. *Id.* at 156-71.

The ALJ assigned "great weight" to the opinions of the record-reviewing psychologists, Dr. Waggoner and Dr. Umana, because their opined limitations are supported by the objective findings in the record, including those submitted after their

13

assessments. *Id.* at 692; *see* 20 C.F.R. § 416.927(c)(3). Furthermore, the ALJ found their opinion that Plaintiff should be limited to a range of simple, low stress work is consistent with Dr. Griffiths' objective mental status findings. *See id.* 416.927(c)(4) ("the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"). And, their opinions were consistent with notes from Dr. Derksen and Dr. Dole that indicated "on many occasions that [Plaintiff's] ADHD was stable with medication." (Doc. No. 6, PageID 692).

In sum, ALJ Hockensmith ALJ reasonably assessed the opinions of Dr. Mormol, Dr. Rosenfield, Dr. Waggoner, and Dr. Umana pursuant to the regulatory factors, and reasonably gave great weight to their opinions.

  **D. Robert B. Sklaroff, M.D.**

Robert Sklaroff, M.D., responded to medical interrogatories in June 2014. Dr. Sklaroff opined that Plaintiff's impairments did not meet the requirements of any Listed impairments. He noted that Plaintiff was "asymptomatic from [a] medical perspective" and her "psyche-related issues are not viewed as severe." (Doc. No. 6, PageID 634). Dr. Sklaroff concluded that Plaintiff had no functional work-related limitations.

The ALJ assigned Dr. Sklaroff's opinion "some weight." *Id.* at 691. Plaintiff asserts that the ALJ applied "substantially less rigorous scrutiny to this completely conclusory 'opinion' than to the treating source opinion of Dr. Derksen." (Doc. No. 7, PageID 1054). However, the ALJ did provide reasons for assigning Dr. Sklaroff's opinion some weight. The ALJ correctly observed that Dr. Sklaroff "is an impartial medical expert who had the opportunity to review the entire record at the time of the prior

14

decision." (Doc. No. 6, PageID 691). Further, the ALJ found that Dr. Sklaroff's opinion is supported by the evidence he relied on and the evidence submitted after his assessment, which showed "no continuing issues related to ITP." *Id.* Nonetheless, the ALJ did not categorically accept Dr. Sklaroff's opinion. Indeed, the ALJ rejected Dr. Sklaroff's opinion that Plaintiff had no limitations, concluding instead that her ITP and respiratory condition warrant some functional limitations.

### E. Absenteeism

Plaintiff asserts that the ALJ erred in concluding that she would only be absent once every other month. She claims that this limitation was based solely on her testimony that she called off work from her current job five to seven times during the past year and a half. This constitutes error, according to Plaintiff, because the ALJ is relying on evidence from the time period after she is alleging disability.

However, the ALJ did not rely solely on that testimony. The ALJ noted that Plaintiff's representative asserted she would be absent due to infusions and blood draws. But the ALJ found that the evidence does not support her argument. For instance, Plaintiff testified that she has not required an infusion since she turned eighteen. Further, she only gets her blood drawn when she sees Dr. Derksen, which is generally every six months to a year. Thus, substantial evidence supports the ALJ's finding that Plaintiff would be absent once every other month.

### F. Conclusion

In summary, although Plaintiff maintains that ALJ Hockensmith should have weighed the opinion evidence differently, substantial evidence supports his consideration

15

of those opinions.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  The substantial evidence standard presupposes that there is a zone of choice within which the decision maker can go either way, without interference by the courts.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).  The ALJ's explanation for why he found Dr. Derksen's opinions merited little weight was within the zone of reasonable choices.  He likewise provided a reasonable explanation, supported by substantial evidence, for how and why he weighed the other medical opinions.

Accordingly, for the above reasons, Plaintiff's Statement of Errors lacks merit.

### IT IS THEREFORE ORDERED THAT:

1. The ALJ's non-disability decision is affirmed; and
2. The case is terminated on the Court's docket.

December 18, 2020

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge